## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Chen, | | ) |
| | Plaintiff, | ) |
| | | ) |
| | v. | ) Case No. 2:24-cv-01516-WSS |
| | | ) |
| ADEDIY et al, | | ) Hon. William S. Stickman |
| | Defendants. | ) |

### Defendants' Motion to Vacate the Preliminary Injunction

**NOW COME** certain defendants[1] ("Defendants") by and through their undersigned counsel, and in support of its motion to vacate the preliminary injunction [Dkt. 26] state as follows:

---

[1] Clobeau, Greenery-Shop, Holiberty, SIQITECHNO, Amazingforless

## <u>TABLE OF CONTENTS</u>

**I.**  Introduction  1

**II.**  Argument  2

   **a.**  Legal Standard  2

   **b.**  The preliminary injunction should be vacated because Plaintiff has not  2
established this Court's personal jurisdiction over Defendants.

     **i.**  Defendants are not subject to general jurisdiction in Pennsylvania.  4

     **ii.**  Defendants are not subject to this Court's specific personal jurisdiction.  5

       **1.**  Defendants have not purposefully directed their allegedly-infringing  6
activities at Pennsylvania or purposefully availed themselves of the
privilege of conducting business in Pennsylvania.

       **2.**  Plaintiff's alleged injury does not arise out of Defendants' activities in  11
Pennsylvania.

       **3.**  The Court's exercise of personal jurisdiction over Defendants does not  12
comport with fair play and substantial justice.

   **c.**  The preliminary injunction must be dissolved because Plaintiff obtained  13
it without Defendants being given proper notice

   **d.**  Plaintiff does not have any likelihood of success on the merits because  15
they cannot prove the essential element of "copying."

   **e.**  At a minimum, the asset restraint should be limited to restraining only  18
the amount that may possibly be recovered through an equitable
accounting of Defendants' profits from the sales of accused products.

**III.**  Conclusion  24

**Table of Authorities**

**Cases**

CSC Holdings, Inc. v. Redisi, 309 F.3d 988 (7th Cir. 2002) ................................................................23

ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A", 51 F.4th 1365 (Fed. Cir. 2022) ..........................................................................................................................19

Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211-12 (3d Cir.2014) ......................................7

Adv. Tech. Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796 (7th Cir. 2014) .............4

Akers v. Akers, 2015 WL 4601155 (E.D. Pa. July 31, 2015) ................................................... 23, 24

Aldossari on Behalf of Aldossari v. Ripp, 49 F.4th 236, 258 (3d Cir. 2022) ......................................14

Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) ....................2

Antsy Labs, LLC v. Individuals, et al., 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) ......................26

Awareness Avenue Jewelry LLC, et al v. The Partnerships, 23-cv-00002, [Dkt. 75], (M.D. Fl. May 19, 2023) ...............................................................................................................................30

Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd., 2011 WL 710587 (W.D. Pa. Feb. 22, 2011) ................................................................................................................................28

BGSD, Inc. v. SPAZEUP, LLC, 2024 WL 688665 (E.D. Pa. Feb. 20, 2024) ....................................10

Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F.Supp. 636, 639 (E.D.Pa.1998) ....................11

Bogle v. JD Techs., Inc., 2021 WL 3472151 (W.D. Pa. Aug. 6, 2021) ............................................14

Consolidation Coal Co. v. Disabled Miners of Southern W. Va., 442 F.2d 1261 (4th Cir.1971) ........18

Corigliano v. Classic Motor, Inc., 611 F. App'x 77, 79-80 (3d Cir. 2015) ........................................7

Corp. Synergies Grp., LLC v. Andrews, 775 F. App'x 54 (3d Cir. 2019) ............................................1

Daimler AG v. Bauman, 134 S. Ct. 746, 749 (2014) ....................................................................5

Deckert v. Independence Shares Corp., 311 U.S. 282 (1940) ........................................................24

Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093 (7th Cir. 2017) ................................21

Document Operations, L.L.C. v. AOS Legal Techs., Inc., 2021 WL 3729333 (5th Cir. Aug. 23, 2021) ................................................................................................................................19

E.I. du Pont de Nemours and Co. v. Agfa-Gavaert NV, 335 F. Supp. 3d 657 (D. Del. 2018) ............3

Enters. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464 (5th Cir. 1985) ............4

Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991) ..............................................20

Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205 (3d Cir. 2014) ............................... 1, 3

Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 142-43 (4th Cir. 2020) ..............................................12

Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423 (1974) ........................................................................................................................18

Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308 (1999) ....................................23

Guidecraft, Inc. v. OJCommerce, LLC, 2019 WL 2373440 (W.D. Pa. May 20, 2019) ............... 11, 16

Harris v. Sportbike Track Gear, 2015 WL 5648710, at *5-6 (D.N.J. Sept. 24, 2015) ..........................12

Hershey Co. v. Pagosa Candy Co., 2008 WL 1730538 at *7 (M.D. Pa. Apr. 10, 2008) ......................11

Hope v. Warden York Cnty. Prison, 956 F.3d 156 (3d Cir. 2020) ..................................................17

Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186 (3d Cir. 1990) ..............................................25

HPG Int'l, Inc. v. Hilton Worldwide Holdings, Inc., 2020 WL 13880403 (E.D. Pa. Apr. 22, 2020) ..1, 3, 17

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998) ..............................................4

In re Diet Drugs, 282 F.3d 220 (3d Cir. 2002) ..........................................................................3

In re Revel AC, 802 F.3d 558 (3d Cir. 2015) ............................................................................19

Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341 (D.N.J. 2020) ..................................................27

Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 11 (2d Cir.

2007)...................................................................................................................................23

Karpov v. Karpov, 555 F. App'x 146 (3d Cir. 2014).......................................................23

Kipp v. Ski Enter. Corp. of Wisc., 783 F.3d 695, 699 (7th Cir. 2015).............................6

Kloth v. S. Christian Univ., 320 F. App'x 113 (3d Cir. 2008 )........................................8

Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982 (11th Cir. 1995)............25

Mader v. Union Twp., 2021 WL 1540517 (W.D. Pa. Apr. 20, 2021)................................3

Mazurek v. Armstrong, 520 U.S. 968 (1997) ..................................................................2

Medeco Sec. Locks, Inc. v. Swiderek, 680 F.2d 37 (7th Cir. 1981)................................17

Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) .............................4

Mon Aimee Chocolat, Inc. v. Tushiya, LLC, 2015 WL 2232270 at *4 (W.D. Pa. May 12, 2015) ... 5, 9, 10

Monster Energy Co. v. Chen Wensheng et al., 136 F. Supp. 3d 897 (N.D. Ill 2015)............................28

Morgan v. Hanna Holdings, Inc., 635 F. Supp. 2d 404 (W.D. Pa. 2009) ........................20

Murphy v. Humboldt Clothing Co., 2021 WL 307541 at *4  (W.D. Pa. Jan. 29, 2021).........................9

NexLearn, LLC v. Allen Interactions, Inc., 859 F.3d 1371, 1378 (Fed. Cir. 2017)...............................13

NFIP, LLC v. Nifty Fiftys also T/A Nifty Fiftys Soda Fountain, 2021 WL 3562852 (E.D. Pa. Aug. 12, 2021) ...............................13

NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151(3d Cir. 1999) .......................1

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007)........................ 6, 16

Peters v. West, 692 F.3d 629 (7th Cir. 2012) .................................................................20

Phillips v. Chas. Schreiner Bank, 894 F.2d 127 (5th Cir.1990) .....................................18

Prominent GmbH v. Prominent Sys., Inc., 2017 WL 1316362 at *9 (W.D. Pa. Apr. 10, 2017)... 11, 15

Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) .............................................. 5, 8

Rucker v. Fasano, 725 F. App'x 416 (7th Cir. 2018)......................................................22

Rush v. Wetzel, 2022 WL 18927427 (W.D. Pa. Apr. 28, 2022) .......................................3

Selle v. Gibb, 741 F.2d 896 (7th Cir. 1984)...................................................................21

Shenzhen Dejiayun Network Technology Co., Ltd. v. The Partnerships, 21-cv-06607, [Dkt. 56] (N.D. Ill. Mar. 28, 2022) ............................................................29

Simport Plastiques, Ltd. v. Imprint Genetics Corp., 2008 WL 11470805 (S.D. Fla. July 30, 2008)....27

Stromback v. New Line Cinema, 384 F.3d 283 (6th Cir.2004).........................................20

Sunline USA, LLC v. Glove King, LLC, 2022 WL 16696069 (E.D. Pa. Nov. 3, 2022)............ 5, 11, 15

Symphony FS Ltd. v. Thompson, 2018 WL 6715894 (E.D. Pa. Dec. 20, 2018)..................................29

Thermolife Int'l, LLC v. Prosource Performance Prod., 2015 WL 9480023, at *5 (D.N.J. Dec. 29, 2015)............................................12

tinyBuild, LLC v. The Partnerships et al., 24-cv-02413 Dkt. 26 (N.D. Ill. May 7, 2024)....................27

Toho Co. Ltd. v. The Partnerships, 23-cv-00720, [Dkt. 55] (N.D. Ill. Mar. 28, 2022)........................30

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).......................7, 8, 9, 13

Utz Quality Foods, LLC v. Dirty S. BBQ Co., LLC, 2020 WL 4334903 at *2 (E.D. Pa. July 28, 2020) ...................................................... 9, 10, 14

Weller v. Flynn, 312 F. Supp. 3d 706 (N.D. Ill. 2018)....................................................22

Winter v. Nat. Res. Def. Council, Inc., 129 S. Ct. 365 (2008)........................................28

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1123-24 (W.D.Pa.1997)........................7

I.    <u>**Introduction**</u>

Plaintiff filed its Complaint on November 27, 2024, alleging that Defendants committed copyright infringement. [Dkt. 2].  On December 4, 2024, Plaintiff filed a motion for a temporary restraining order ("TRO"), [Dkt. 6], which was granted on December 5, 2024, [Dkt. 18].  The TRO was subsequently converted into a preliminary injunction on December 18, 2024. [Dkt. 26]. However, the preliminary injunction should be vacated in its entirety for Defendants because Plaintiff cannot prove the essential element of "copying," necessary to support their copyright infringement claim.  Thus, Plaintiff has no likelihood of success on the merits and the preliminary injunction should be vacated for that reason alone.  <u>Ferring Pharms., Inc. v. Watson Pharms., Inc.,</u> 765 F.3d 205, 210 (3d Cir. 2014), *citing,* <u>NutraSweet Co. v. Vit-Mar Enterprises, Inc.,</u> 176 F.3d 151, 153 (3d Cir. 1999) (A Plaintiff's "failure to establish any element in its favor renders a preliminary injunction inappropriate.").  Additionally, the preliminary injunction should be dissolved because Plaintiff did not give Defendants sufficient advance notice of their motion for preliminary injunction.  <u>Corp. Synergies Grp., LLC v. Andrews,</u> 775 F. App'x 54, 60 (3d Cir. 2019) ("If a non-movant is not given proper notice, the preliminary injunction should be set aside even if there were no other ground for doing so.") (internal citations omitted).  Moreover, the preliminary injunction should be vacated in its entirety for Defendants because Defendants are not subject to the personal jurisdiction of this Court which is required to enter a preliminary injunction.  <u>HPG Int'l, Inc. v. Hilton Worldwide Holdings, Inc.,</u> 2020 WL 13880403 at *8 (E.D. Pa. Apr. 22, 2020) ("the existence of personal jurisdiction over the parties is a necessary prerequisite before the Court entertains a Motion for Preliminary Injunction.").  Lastly, the prejudgment asset restraint presently in place from the preliminary injunction restrict the withdrawal of any funds from any of Defendants' accounts, regardless of whether they are derived from lawful sales or futures income.  Declaration of Liying Xu at ¶ 7.  There is currently more than $299,087 frozen in Defendants' accounts compared to a

revenue and maximum equitable award of $236.49 from sales of the allegedly-infringing product, which strains equity. Id. at ¶ 6-7. Accordingly, even if the preliminary injunction is left in place, this Court should modify the scope of the preliminary injunction and reduce the asset restraint to accord with the principles of equity underlying Rule 65.

## II.    Argument

### a.  Legal Standard

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Further, the preliminary injunction should also be tailored to the violation. Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (holding that a court issuing a preliminary injunction must tailor it so that it is not overly broad). In order to properly obtain a preliminary injunction, Plaintiff must have demonstrated (1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest. Ferring Pharms., Inc., 765 F.3d at 210; Mader v. Union Twp., 2021 WL 1540517 at *3 (W.D. Pa. Apr. 20, 2021). A Plaintiff's "failure to establish any element in its favor renders a preliminary injunction inappropriate." Id. citing, NutraSweet Co., 176 F.3d at 153. Because "[p]reliminary injunctive relief is an extraordinary remedy" it "should be granted only in limited circumstances." Rush v. Wetzel, 2022 WL 18927427 at *1 (W.D. Pa. Apr. 28, 2022).

### b.  The preliminary injunction should be vacated because Plaintiff has not established this Court's personal jurisdiction over Defendants.

The Third Circuit has "held that preliminary matters such as…personal jurisdiction…should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." In re Diet Drugs, 282 F.3d 220, 229 (3d Cir. 2002) (internal citations omitted).  Following, "[t]he question of personal jurisdiction is a threshold issue that the Court should address before considering the merits of Plaintiff's preliminary injunction application." HPG Int'l, Inc. v. Hilton Worldwide Holdings, Inc., 2020 WL 13880403 at *8 (E.D. Pa. Apr. 22, 2020) (internal citations omitted).  Following, "the existence of personal jurisdiction over the parties is a necessary prerequisite before the Court entertains a Motion for Preliminary Injunction." Id.; E.I. du Pont de Nemours and Co. v. Agfa-Gavaert NV, 335 F. Supp. 3d 657, 665 (D. Del. 2018) ("[A] district court cannot enjoin a party if it does not have jurisdiction over that party[.]"); See also, Adv. Tech. Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant"); Enters. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 470 (5th Cir. 1985) ("[A] district Court has no power to grant an interlocutory or final injunction against a party it has not acquired valid jurisdiction").

Plaintiff has the burden of establishing personal jurisdiction, and a Court may exercise personal jurisdiction over a non-resident defendant only when consistent with the requirements of the Fourteenth Amendment's Due Process Clause. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998). "[A] District Court typically exercises personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir.2007). In Pennsylvania, the state statutory and federal constitutional analyses merge. Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Constitutional due process requires that this Court determine whether a defendant has sufficient minimum contacts with Pennsylvania such that the maintenance of this action comports with "traditional notions of fair play and

3

substantial justice." <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001). Personal jurisdiction

may be general or specific. <u>Remick</u>, 238 F.3d at 255. Sufficient, valid contacts do not exist for this

Court to exercise either general or specific personal jurisdiction over Defendants, and this Court's

lack of jurisdiction requires the preliminary injunction to be vacated.

   *i. Defendants are not subject to general jurisdiction in Pennsylvania.*

  General jurisdiction requires a foreign corporation defendant to "have affiliations with the

[forum] State [which] are so continuous and systematic as to render [the defendant] essentially at

home in the forum State." <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 749 (2014). General jurisdiction

may arise in an "exceptional case where a corporation's operations in a forum other than its formal

place of incorporation or principal place of business may be so substantial and of such a nature as to

render the corporation at home in that State." <u>Sunline USA, LLC v. Glove King, LLC</u>, 2022 WL

16696069 at *3 (E.D. Pa. Nov. 3, 2022). This is a fairly high standard requiring a great amount of

contacts. <u>Mon Aimee Chocolat, Inc. v. Tushiya, LLC</u>, 2015 WL 2232270 at *4 (W.D. Pa. May 12,

2015) (declining general jurisdiction over Defendants where Defendants: (i) did not maintain a

physical presence in Pennsylvania, (ii) not have offices, employees, registered agents or bank

accounts in Pennsylvania, and (iii) are not registered to do business in Pennsylvania.).

  Applying these factors here, general jurisdiction is manifestly lacking. Defendants are

Chinese proprietors with principal places of business in the Peoples' Republic of China. Declaration

of Liying Xu at ¶ 5; *See*, <u>Kipp v. Ski Enter. Corp. of Wisc.</u>, 783 F.3d 695, 699 (7th Cir. 2015)

(holding that maintaining a public website, by itself, is insufficient to establish general jurisdiction).

Defendants never owned, leased, or utilized an office in Pennsylvania. <u>Id</u>. Defendants never

advertised, held a telephone listing, or maintained a bank account in Pennsylvania, nor have

Defendants had any agents, employees, or contractors in Pennsylvania. <u>Id</u>. Plaintiff also does not

allege any facts establishing any pervasive or otherwise constant affiliation with Pennsylvania. Accordingly, this Court does not have general personal jurisdiction over Defendant.

      *ii.  Defendants are not subject to this Court's specific personal jurisdiction.*

      This Court also does not have specific personal jurisdiction over Defendants, which generally requires that (1) the defendant purposefully directed its activities at the forum; (2) the litigation arose out of or relate to at least one of those forum directed activities; and, (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. O'Connor, 496 F.3d at 317 (3d Cir. 2007); Murphy v. Humboldt Clothing Co., 2021 WL 307541 at *2 (W.D. Pa. Jan. 29, 2021).  Only after a court determines that a defendant has sufficient "minimum contacts" with the forum State will the Court look to whether subjecting the defendant to the court's personal jurisdiction nevertheless offends traditional notions of fair play and substantial justice.  Id.  Ascertaining specific personal jurisdiction in claims arising from Internet commerce requires courts to determine whether a defendant established minimum contacts through cyberspace.  Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1123-24 (W.D.Pa.1997); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) ("[Zippo] has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site."). When analyzing Internet commerce cases, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  Zippo, 952 F.Supp. at 1124 (finding personal jurisdiction existed where the defendant "[did] more than advertise on the Internet in Pennsylvania" by using its website to "contract[ ] with approximately 3,000 individuals and seven Internet access providers in Pennsylvania."); Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211-12 (3d Cir.2014).

**1.** <u>Defendants have not purposefully directed their allegedly-infringing activities at</u>
<u>Pennsylvania or purposefully availed themselves of the privilege of conducting</u>
<u>business in Pennsylvania.</u>

To be subject to the specific jurisdiction of a court, the defendant must have "purposefully
availed itself of the privilege of conducting activities within the forum." <u>Corigliano v. Classic Motor,</u>
<u>Inc.</u>, 611 F. App'x 77, 79-80 (3d Cir. 2015). To establish personal jurisdiction, Plaintiff alleges that
"Defendants are soliciting Pennsylvania consumers by operating one or more online storefronts
through which Pennsylvania residents and consumers can purchase Defendants' Infringing
Products." [Dkt. 7 pg. 15]. But these allegations fall short of: (i) demonstrating that Defendants
"purposely availed [themselves] of the privilege of conducting business activities" in Pennsylvania;
or (ii) how Defendants' unadvertised Walmart storefronts are "purposefully directed" at
Pennsylvania. Moreover, Plaintiff alleges, upon information and belief that "Defendants have
transacted business with consumers located in the U.S., including Pennsylvania, for the sale and
shipment of Infringing Products." [Dkt. 2 at ¶ 12(e)]. However, this is false, and Defendants did not
sell or ship a single accused product to Pennsylvania. Xu Decl. at ¶ 6, Exhibit D. In fact, the
accused product is shown as "currently unavailable" in Plaintiff's own evidence files. <u>Id.</u>, Exhibit E.

The Third Circuit has cautioned that "the mere operation of a commercially interactive web
site should not subject the operator to jurisdiction anywhere in the world." <u>Toys "R" Us, Inc.</u>, 318
F.3d at 454; <u>Remick</u>, 238 F.3d at 259 n. 3 (the "mere posting of information or advertisements on an
Internet website does not confer nationwide personal jurisdiction."); <u>Kloth v. S. Christian Univ.</u>, 320
F. App'x 113, 116 (3d Cir. 2008 )("although SCU certainly could have foreseen that students from
Delaware, or any other state, might choose to participate in their distance learning program because
the Web site is accessible to a nationwide (indeed, global) audience, this foreseeability alone cannot
satisfy the purposeful availment requirement."). Rather, there must be evidence that the defendant

"purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.  Id.

The Third Circuit case Toys "R" Us provides similar facts to the current case and is instructive as to the "purposefully availed" requirement.  The defendant in Toys "R" Us operated a commercially interactive website that sold goods infringing plaintiff's trademark.  Toys "R" Us, 318 F.3d at 454.  The defendant made two sales to the forum through their commercial website to affiliates of plaintiff, yet the court held that this was insufficient to establish specific jurisdiction over defendant.  Id. at 455.  Following, Courts within this circuit have repeatedly ruled that a defendant's operation of an interactive website, even along with evidence of a sale within the forum state that is "orchestrated" by the plaintiff, is insufficient to establish specific jurisdiction.  See, Utz Quality Foods, LLC v. Dirty S. BBQ Co., LLC, 2020 WL 4334903 at *2 (E.D. Pa. July 28, 2020) (finding sale into forum that was "orchestrated" by Plaintiff's counsel along with the "mere operation of a commercially interactive website" does not constitute purposeful availment); Murphy v. Humboldt Clothing Co., 2021 WL 307541 at *4  (W.D. Pa. Jan. 29, 2021) ("a sale within the forum state that is 'orchestrated' by the plaintiff for the purpose of litigation does not show the type of 'purposeful availment' that is necessary for the existence of personal jurisdiction."); Mon Aimee Chocolat, Inc., 2015 WL 2232270 at *4-5 (finding no personal jurisdiction where defendant operated interactive website and plaintiff's counsel placed order for allegedly infringing product).

The fact that Defendants' websites allowed for shipping of the accused product to Pennsylvania "demonstrate, at most, that Defendant was *capable* of doing business with Pennsylvania customers through its website, not that it intentionally did so," which Courts within this District and elsewhere have found to be insufficient to establish a basis for exercising personal jurisdiction **when, like here, no sales of the allegedly infringing product were made into the forum**.

Murphy, 2021 WL 307541 at *5 (finding defendant's website that allowed sales to be conducted entirely online and shipped to Pennsylvania was an insufficient basis for exercising jurisdiction over defendant because there was no evidence showing defendant targeted the website of the forum or knowingly interacted with residents of the forum via the website, where only sale of infringing product to forum was to Plaintiff's investigator); BGSD, Inc. v. SPAZEUP, LLC, 2024 WL 688665 at *3 (E.D. Pa. Feb. 20, 2024) (finding that defendant was not subject to jurisdiction of the court where defendant did not sell any of the allegedly infringing product to Pennsylvania and mere operated a website which allowed "consumers, including Pennsylvania residents, to purchase and place order for its products."); Mon Aimee Chocolat 2015 WL 2232270 at *5 (finding that defendant's interactive website available to customers nationwide was insufficient to confer personal jurisdiction  where, "it is critical to note that ***there is no evidence that the website has generated any Pennsylvania claim-related sales or shipments***.") (emphasis added); Utz Quality Foods, 2020 WL 4334903 at *3 (nothing that "there must be 'something more' beyond [Defendant]'s website simply allowing product sales into Pennsylvania to show that [Defendant] purposefully directed its activities at Pennsylvania" and finding no personal jurisdiction where defendant's only infringing sale from the website into Pennsylvania was to Plaintiff's investigator); Guidecraft, Inc. v. OJCommerce, LLC, 2019 WL 2373440 (W.D. Pa. May 20, 2019) (denying specific personal jurisdiction and noting that defendant did not direct its website towards forum simply because it allowed users to select products, add them to their carts, and purchase them directly through the website); Prominent GmbH v. Prominent Sys., Inc., 2017 WL 1316362 at *9 (W.D. Pa. Apr. 10, 2017) (finding no personal jurisdiction where defendant's website was targeted at anyone anywhere in the world who is interested in purchasing defendant's product); Hershey Co. v. Pagosa Candy Co., 2008 WL 1730538 at *7 (M.D. Pa. Apr. 10, 2008) ("The fact that the [defendant's] web site lists Pennsylvania as one in a list of general shipping destinations, standing alone, does not demonstrate

the purposeful availment of doing business in Pennsylvania."); Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F.Supp. 636, 639 (E.D.Pa.1998) ("[c]reating a Web Site may be felt nation or even world-wide, but without more, it is not an act purposefully directed toward the forum."); Sunline USA, LLC, 2022 WL 16696069 at *5 (noting that "merely advertising a product online is not sufficient to establish specific jurisdiction" and finding no specific jurisdiction since there was no evidence supporting that the advertising was targeted towards Pennsylvania residents); Thermolife Int'l, LLC v. Prosource Performance Prod., 2015 WL 9480023, at *5 (D.N.J. Dec. 29, 2015) (the fact that New Jersey appeared as a shipping option in the drop-down menus or could be manually entered as a shipping option on the defendants' websites was insufficient to show that foreign defendants had specifically targeted New Jersey with their websites); Harris v. Sportbike Track Gear, 2015 WL 5648710, at *5-6 (D.N.J. Sept. 24, 2015) (rejecting plaintiff's assertion of personal jurisdiction that was based on, among other things, the defendant's use of "cookies" on its website to keep track of consumer's shopping cart contents, store delivery addresses, and other personal details and defendant's use of social media platforms, including Facebook, Twitter, Instagram, and Youtube, to market its products and solicit business from potential customers throughout the world); See also, Rubik's Brand, Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2021 WL 825668, at *3 (N.D. Ill. Mar. 4, 2021) (granting motion to dismiss for lack of personal jurisdiction, noting "That an Illinoisan might someday find Yoyoly's website and decide to purchase a counterfeit Rubik's product from the site simply does not suffice to vest the Court with personal jurisdiction over Yoyoly"); Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 142-43 (4th Cir. 2020) (noting that plaintiff fell into the trap of "focus[ing] much of their attention on the fact that the website includes South Carolina as an option in the drop-down menu used by customers to select their state of residence when making reservations. South Carolina's inclusion in a list of every other state in the country (and every other country in the world) shows that Marriott was willing to accept

reservations from South Carolina residents, but it does not show that Marriott was targeting South Carolina residents through its website."); NexLearn, LLC v. Allen Interactions, Inc., 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("Allen's inclusion of Kansas in its dropdown of all states on its website is not enough to subject Allen to jurisdiction in Kansas. Allen's address selector may indicate its amenability to selling ZebraZapps to Kansas residents, but it does not establish minimum contacts arising out of or related to the infringement claim."). Although the mere possibility of a sale of the accused product, without an actual sale is insufficient to confer personal jurisdiction, Plaintiff cannot even show the possibility of a sale of the accused product into the forum. Notably, Plaintiff's own evidence files show Defendants' listings of the accused products as "currently unavailable," thus, no sales could be made into Pennsylvania or anywhere, and Plaintiff cannot even demonstrate the possibility of a sale into Pennsylvania. Xu Decl. at ¶ 6, Exhibit E.

Defendants' websites were not specifically targeted at Pennsylvania and Defendants did not sell or ship a single infringing product to Pennsylvania. Accordingly, Plaintiff cannot support the necessary contention that Defendants "directed" anything to Pennsylvania, much less engaged in sufficient activity to warrant this Court's specific personal jurisdiction. Toys "R" Us, Inc., 318 F.3d at 454-55; NFIP, LLC v. Nifty Fiftys also T/A Nifty Fiftys Soda Fountain, 2021 WL 3562852 at *5 (E.D. Pa. Aug. 12, 2021) ("Without 'something more' to demonstrate that Defendants aimed their tortious conduct at the forum state through solicitation of sales or shipments of infringing goods, I cannot find that they have the requisite minimum contacts for extending jurisdiction."). "[Plaintiff] avers nothing beyond conclusory statements and speculation that [Defendants] purposely directed any commercial activity to Pennsylvania through internet sales," however, the mere possibility of a sale of the accused product to Pennsylvania, without any actual sale is insufficient to show that Defendants purposefully availed themselves to the jurisdiction of the state of Pennsylvania. Bogle v. JD Techs., Inc., 2021 WL 3472151 at *5 (W.D. Pa. Aug. 6, 2021); Utz Quality Foods, 2020 WL

4334903 at *3 ("a likely possibility of sales via [Defendant]'s and third-party websites does not alone establish specific jurisdiction.")

      **2.** <u>Plaintiff's alleged injury does not arise out of Defendants' activities in Pennsylvania.</u>

Plaintiff does not substantively establish that the Defendants acted at or in Pennsylvania, and similarly cannot show that any damage Plaintiff may have endured was derived from the Defendants' acts in Pennsylvania.  In order for this Court to exercise specific personal jurisdiction over Defendants, their "suit-related conduct must create a substantial connection with the forum state.  <u>Aldossari on Behalf of Aldossari v. Ripp</u>, 49 F.4th 236, 258 (3d Cir. 2022).  Plaintiff has presented no evidence that anyone else in Pennsylvania had placed an order or even viewed Defendants' storefronts.  At most, Defendants operated an online store that was potentially accessible from Pennsylvania.  However, this level of accessibility is no different than in any other forum where a resident has internet access and is insufficient to give rise to personal jurisdiction. <u>Bogle</u>, 2021 WL 3472151 at *5 ("The 'mere operation of a commercially interactive website' does not confer jurisdiction wherever that website may be accessed."); <u>Prominent GmbH</u>, 2017 WL 1316362 at *9 (finding no personal jurisdiction where defendant's website was targeted at anyone anywhere in the world who is interested in purchasing defendant's product).

Plaintiff does not allege that any of its "injuries" are related to Defendants' Pennsylvania specific actions. Plaintiff alleges, upon information and belief that "Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of Infringing Products." [Dkt. 2 at ¶ 12(e)]. However, as discussed *supra*, Defendants did not sell a single accused product to Pennsylvania. Xu Decl. at ¶ 6, Exhibit D. Moreover, the Defendants have not taken any action to specifically advertise or target sales to Pennsylvania consumers. <u>Id</u>. ¶ 5. "Personal jurisdiction must arise from the [Defendants'] own purposeful targeting of the forum state, not the unilateral activities of others."  <u>Murphy</u>, 2021 WL 307541 at *6; <u>Sunline USA, LLC</u>,

2022 WL 16696069 at *6 (declining to exercise jurisdiction where "the alleged tortious actions occurred in California and do not connect [Defendant] to Pennsylvania apart from the fact the Plaintiff is based in Pennsylvania."). Plaintiff does not, and cannot, allege that its "injuries" are the result of a purchase transaction whereby Defendants were *capable* of doing business with Pennsylvania customers, not that they intentionally did so.  Id. at *5; Utz Quality Foods, 2020 WL 4334903 at *3 ("a likely possibility of sales via [Defendant]'s and third-party websites does not alone establish specific jurisdiction.").

   **3.**   The Court's exercise of personal jurisdiction over Defendants does not comport
          with fair play and substantial justice.

       In addition to failing to show that the Defendants purposefully directed their activities at Pennsylvania or purposefully availed themselves of the privilege of doing business in Pennsylvania, or that Plaintiff's "injuries" arose from Defendants' contacts within Pennsylvania, Plaintiff cannot show how subjecting the Defendant to this Court's personal jurisdiction comported with fair play and substantial justice.  In making this determination, the Court should consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations."  O'Connor, 496 F.3d at 324. The burden on the defendant is a "primary concern" in any case.  Id.

       Here, Defendants would be significantly burdened with having to litigate the merits of the case in Pennsylvania, as they are based in China and conduct their business in China, several thousand miles away.  Xu Decl. at ¶ 5. Defendants have no office, employees, or agents in Pennsylvania, and Defendants would face considerable additional expenditures by having to remotely manage local counsel, conduct discovery, and proceed through trial.  Id.  Further,

Pennsylvania's interest in adjudicating the dispute tips against exercising personal jurisdiction, as Plaintiff's claims are founded in federal copyright infringement [Dkt. 2].  Litigating in this forum would not serve the interstate judicial system's interest in obtaining the most efficient resolution of the controversy as so little - if anything - happened here: evidence supporting Plaintiff's claims would theoretically come from individuals with no ties to Pennsylvania and/or from records of a company located on the other side of the country or the Pacific Ocean.  Guidecraft, 2019 WL 2373440 at *6 (finding subjecting defendant to personal jurisdiction in Pennsylvania would not comport with traditional notions of fair play and substantial justice where Defendant did not have any relationship with Pennsylvania and "witnesses would have to travel more than 1,000 miles to the forum state, making the interest Pennsylvania has in adjudicating this matter far less compelling.").  Defendants are Chinese proprietors and the nations' shared interest is "best served by…an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 115 (1987).  Accordingly, all three factors weigh factors weigh against finding personal jurisdiction, thus Plaintiff's preliminary injunction should be vacated and Defendants should be dismissed pursuant to Rule 12(b)(2).  HPG Int'l, 2020 WL 13880403 at *8 ("Because Plaintiff has not satisfied this required showing of personal jurisdiction over Defendants, it would be premature to consider Plaintiff's application for a preliminary injunction as the Court cannot enjoin parties over which it does not have personal jurisdiction.").

### c.  The preliminary injunction must be dissolved because Plaintiff obtained it without Defendants being given proper notice.

It is axiomatic in the Third and other circuits that Rule 65(a)(1) of the Federal Rules requires that "[a] preliminary injunction must be issued with notice to the adverse party."  Hope v. Warden York Cnty. Prison, 956 F.3d 156, 161 (3d Cir. 2020); Corp. Synergies Grp., 775 F. App'x at 60 (A

preliminary injunction may only be issued on notice to the adverse party."); <u>Medeco Sec. Locks, Inc.</u> <u>v. Swiderek</u>, 680 F.2d 37, 38 (7th Cir. 1981) ("Rule 65[] provides that no preliminary injunction shall be issued without notice to the adverse party. Notice implies the opportunity to be heard. Hearing requires trial on the issue or issues of fact. Trial on the issue of fact necessitates opportunity to present evidence and not by only one side of the controversy."); <u>Phillips v. Chas. Schreiner Bank</u>, 894 F.2d 127, 130-31 (5th Cir.1990) ("[t]he courts consistently have treated rule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without notice"); <u>Consolidation Coal Co. v. Disabled Miners of Southern W. Va.</u>, 442 F.2d 1261, 1269 (4th Cir.1971) (court's issuance of an *ex parte* preliminary injunction "was manifestly error, because Rule 65(a)(1) is explicit that 'no preliminary injunction shall be issued without notice to the adverse party' "). Although Rule 65(a) does not specify a time period for proper notice, the Supreme Court has explained that a defendant must be "given a fair opportunity to oppose the application and to prepare for such opposition."  <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto</u> <u>Truck Drivers Local No. 70</u>, 415 U.S. 423, 433 n.7 (1974).

Critically, in the current case, Defendants were not served with advance notice of the motion for preliminary injunction, and Defendants did not receive any emails from the Plaintiff regarding their motion for preliminary injunction, and the only email from Plaintiff including the term preliminary injunction was received on January 11-12, 2025, nearly a month after the preliminary injunction was granted.  Xu Decl. at ¶ 4, Exhibit C.  Accordingly, because Defendants did not receive proper notice of Plaintiff's motion for a preliminary injunction under Rule 65(a), the preliminary injunction must be dissolved for that reason alone.  <u>Corp. Synergies Grp.</u>, 775 F. App'x at 60 ("If a non-movant is not given proper notice, the preliminary injunction should be set aside even if there were no other ground for doing so.") (internal citations omitted); <u>ABC Corp. I v.</u> <u>P'ship & Unincorporated Associations Identified on Schedule "A"</u>, 51 F.4th 1365 (Fed. Cir. 2022)

14

(noting that "[a] preliminary injunction issued without notice, motion, hearing or evidence should be vacated," and vacating preliminary injunction for insufficient notice and finding that there was "no basis for concluding that Amazon's freezing of [defendant]'s account apprised [Defendant] of the pendency of a motion for (or consideration of) a preliminary injunction"); Document Operations, L.L.C. v. AOS Legal Techs., Inc., 2021 WL 3729333 at *2 (5th Cir. Aug. 23, 2021) ("a preliminary injunction granted without adequate notice and an opportunity to oppose it should be vacated and remanded to the district court.").

### d. Plaintiff does not have any likelihood of success on the merits because they cannot prove the essential element of "copying."

To establish a likelihood of success, a plaintiff must show that "there is reasonable chance, or probability, of winning." In re Revel AC, 802 F.3d 558, 568 (3d Cir. 2015) (internal citations omitted). This requires the plaintiff to "demonstrate that it can win on the merits," which involves a showing that its chances of establishing each of the elements of the claim are "significantly better than negligible." Id. To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The second element, actionable copying, may be proven by direct evidence or, where that is absent, "the plaintiff may show copying by demonstrating that the defendants *had access to the copyrighted work* and that the works are 'substantially similar.'" Morgan v. Hanna Holdings, Inc., 635 F. Supp. 2d 404, 413 (W.D. Pa. 2009) (emphasis added). Plaintiff's motion fails to show, or even allege actionable copying by direct evidence, accordingly, in order to prove the second element, Plaintiff was required to show that Defendants had access to the copyrighted work and show that there is a substantial similarity between the works to infer copying. See [Dkt. 7].

15

The term "access" is defined broadly in the copyright infringement context as "having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy." Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir.2004) (brackets in original) (citations omitted); Peters v. West, 692 F.3d 629, 633 (7th Cir. 2012) ("Where direct evidence, such as an admission of copying, is not available (as is typically the case, a plaintiff may prove copying by showing that the defendant had the opportunity to copy the original (often called "access") and that the two works are "substantially similar"). Moreover, to establish access, the indirect evidence must show that there was "a reasonable possibility of access." Cottrill v. Spears, 87 F. App'x 803, 805 (3d Cir. 2004), *as amended on reh'g* (June 2, 2004). Here, Plaintiff's Motion alleges that "[t]he striking similarity between the images claimed in the Asserted Copyright and Defendants' Infringing Products demonstrate not only Plaintiff [sic] substantial likelihood of success on the merits, but also that Defendants have willfully copied Plaintiff's designs." [Dkt. 7 pg. 19]. However, aside from these conclusory statements, Plaintiff has offered no evidence of access, and access cannot be inferred based on Plaintiff's conclusive statements and speculation alone. Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984) ("The plaintiff must always present sufficient evidence to support a reasonable possibility of access because the jury cannot draw an inference of access based upon speculation and conjecture alone."); *see also* Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1108 (7th Cir. 2017) ("the existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials.").

Here, the asserted copyrights have an effective registration date of April 18, 2022, and a date of first publication of January 10, 2015. [Dkt. 2-3]. Notably, however, Defendants' supplier, LV Tao, created the product design for Defendants' allegedly-infringing products on June 1, 2010, and first published the design on September 1, 2010, and has been sold online and offline since that date,

including through LV Tao's 1688.com storefront.  Xu Decl. at ¶ 3, Exhibit B.  Moreover, Defendants' supplier LV Tao obtained a Chinese copyright registration for the design of Defendants' accused products in February 2019, which clearly states that LV Tao created the product design for Defendants' allegedly-infringing products on June 1, 2010, and first published the design on September 1, 2010.  Xu Decl. at ¶ 3, Exhibit A.  Notably, LV Tao's June 1, 2010, date of creation and September 1, 2010, date of first publication predate Plaintiff's publication date of January 10, 2015 of the asserted copyrights by nearly five years.  Xu Decl. at ¶ 3, Exhibit A; [Dkt. 2-3].  Accordingly, Defendants' supplier not only created Defendants' allegedly-infringing design prior to the publication of the asserted copyrights, but Defendants' supplier published the design roughly five years prior to Plaintiff's publication of the asserted copyrights.  Following, since neither Defendants nor their supplier had access to the asserted copyrights until after Defendants' supplier created and published the designs, Plaintiff necessarily cannot show that Defendants had access to and an opportunity to copy the asserted copyrights and Plaintiff's claim for copyright infringement fails as a matter of law.  Cottrill, 87 F. App'x at 806 ("***If the only opportunity to view plaintiffs' work occurs after defendants have completed their own work, then there can be no opportunity to copy the work, and thus no access for purposes of copyright law.***") (emphasis added); *see also* Weller v. Flynn, 312 F. Supp. 3d 706, 718-19 (N.D. Ill. 2018) (granting defendant's motion to dismiss plaintiff's copyright claim where plaintiff did not sufficiently allege that defendant had access to the copyrighted work); Rucker v. Fasano, 725 F. App'x 416, 418 (7th Cir. 2018) (granting summary judgment in favor of defendant where plaintiff failed to show that defendant knew anything or had access to the unpublished copyrighted work prior to defendant completing their allegedly infringing work).  Accordingly, Plaintiff cannot show a likelihood of success on the merits and the preliminary injunction in place should be vacated for Defendants.

e. **At a minimum, the asset restraint should be limited to restraining only the amount that may possibly be recovered through an equitable accounting of Defendants' profits from the sales of accused products.**

The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages." Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Third Circuit, which noted that Grupo Mexicano held that "an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed." Karpov v. Karpov, 555 F. App'x 146, 147 n.2 (3d Cir. 2014); AFG Media Ltd. v. Poptrend-Off., 2023 WL 9023415 at *8 n. 6 (W.D. Pa. Dec. 29, 2023) ("While the Court has the authority to restrain assets that have a close nexus with its exercise of equitable powers, it cannot do so solely for the purpose of preserving assets upon which a plaintiff may execute in the future if it should prevail."); Akers v. Akers, 2015 WL 4601155 at *2 (E.D. Pa. July 31, 2015) ("A federal court has no authority generally to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim."); *see also*, Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 11, 117 n.8 (2d Cir. 2007) ("federal courts lack power to issue…[i]njunctions that prohibit a party from transferring assets pending resolution of an action."); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief. Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). Following, "a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted ***a cognizable equitable claim***, ***has demonstrated a***

18

**sufficient nexus between that claim and specific assets of the defendant which are the target**

**of the injunctive relief**, and has shown that the requested interim relief is a reasonable measure to

preserve the status quo in aid of the ultimate equitable relief claimed." <u>Akers</u>, 2015 WL 4601155 at

*2. (internal citations omitted) (emphasis added); <u>In re Trustees of Conneaut Lake Park, Inc.</u>, 554

B.R. 100, 107 (Bankr. W.D. Pa. 2016) (same); <u>AFG Media Ltd.</u>, 2023 WL 9023415 at *8 n. 6

(holding that the blanket asset freeze of all funds in defendant's account "goes further than what is

permitted and beyond the close nexus required" and ordering that the asset freeze be reduced to

only funds from defendant's sales of the products infringing plaintiff's copyright – "but no more.");

*see also*, <u>Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on</u>

<u>Schedule A</u>, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013) ("even where equitable relief is

sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably

necessary to secure the (future) equitable relief.").

      Applying these principles, any prejudgment asset freeze should be limited to the amount that

Plaintiff has sufficiently demonstrated it is likely to recover pursuant to an equitable accounting of

profits in this case, *i.e.*, those which were earned through the sales of the accused products. 17 U.S.C.

§ 504(a); <u>AFG Media Ltd.</u>, 2023 WL 9023415 at *8 n. 6 (holding that a blanket asset freeze of all

funds in defendant's account that was "disproportionate to amounts earned by Defendants relating

to their sales of the allegedly [copyright] infringing Costumes" goes "further than permitted and

beyond the close nexus required. Therefore, the Court holds that **all funds allegedly arising from**

**the sale of the allegedly infringing Costumes shall be frozen - but no more**.") (emphasis

added); <u>Labs, Inc. v. 4X PODS</u>, 509 F. Supp. 3d 52 (D.N.J. 2020) ("Juul is only entitled to an asset

freeze of the amount of funds which Juul could reasonably expect to recover via disgorgement

based on its wordmark claim."); <u>Hoxworth v. Blinder, Robinson & Co.</u>, 903 F.2d 186, 198 (3d Cir.

1990) ("[**T]he court must make some attempt reasonably to relate the value of the assets**

***encumbered to the likely value of the expected judgment***.") (emphasis added); *see also*, <u>Deckers</u>, 2013 WL 12314399, at *2 ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); <u>Levi Strauss & Co. v. Sunrise Int'l Trading Inc.</u>, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.) (the purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits.").  Despite this requirement, preliminary injunction order contains an overbroad asset freeze restraining "*all funds* in or which are hereafter transmitted into" *all accounts* related to Defendants. [Dkt. 26 ¶ A(8)] (emphasis added). The scope of the asset restraint is not only inconsistent with the scope of the injunction - wherein Defendants are merely prohibited from "the unauthorized and unlicensed use of Plaintiff's Copyrighted Work" and "sale of any Infringing Products"- but it is not supported by the evidence submitted by Plaintiff in support of its Motion. [Dkt. 52 ¶ A(1)].

      To be sure, at the time Plaintiff's *ex parte* motion for entry of a TRO was filed and the TRO was entered, Plaintiff would have had little to no information of Defendants' sales of the identified, accused product, including revenues earned therefrom.  However, this is no longer the case and has not been the case since Plaintiff ostensibly received expedited discovery from the platforms. [Dkt. 13].  While the robustness of disclosures varies from platform to platform, in response to a TRO in

a typical Schedule A case, Amazon, Walmart, eBay, and Temu, among others, will report the sales of

the accused item, for each defendant, back to the plaintiff along with the defendant's email address

and other registration information.  Whatever these sales figures are, for each defendant and absent,

for example, evidence of costs of goods, shipping, or other debits therefor, they amount to the

maximum amount retrainable under Rule 65 based on the evidence before the court at that time.

Because the amount of the "[maximum] profits is known, then the asset freeze should apply only to

that specific amount and no more."  Antsy Labs, LLC v. Individuals, et al., 2022 WL 17176498 at *4

(N.D. Ill. Nov. 23, 2022); AFG Media Ltd., 2023 WL 9023415 at *8 n. 6 (holding that "all funds

allegedly arising from the sale of the allegedly [copyright] infringing Costumes shall be frozen—but

no more.").

Plaintiff has no equitable interest in assets which are not the proceeds of the demonstrated,

allegedly-infringing activities.  Karpov, 555 F. App'x at 147 n.2 ("an injunction freezing assets

cannot be entered in an action for damages where no lien or equitable interest in the assets is

claimed."); AFG Media Ltd., 2023 WL 9023415 at *8 n. 6 ("While the Court has the authority to

restrain assets that have a close nexus with its exercise of equitable powers, it cannot do so solely for

the purpose of preserving assets upon which a plaintiff may execute in the future if it should

prevail."); Micnerski, 2002 WL 31415753, at *1 ("federal district courts do not have the power to

grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or

equitable interest is claimed"); see also, Simport Plastiques, Ltd. v. Imprint Genetics Corp., 2008 WL

11470805 at *2 (S.D. Fla. July 30, 2008), report and recommendation adopted, 2008 WL 11470806 (S.D.

Fla. July 30, 2008) ("A District Court can order an asset freeze as part of preliminary injunctive relief

only with respect to assets in which an equitable interest is claimed and established."). The Platforms

have already identified the activities which, Plaintiff argues, are the proceeds of the (allegedly)

infringing activity identified by Plaintiff, and Plaintiff provides no further evidence to support

restraining any further funds under Rule 65.  *See*, Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341, 358-59 (D.N.J. 2020) (noting that "[Plaintiff] has the burden what profits it seeks to disgorge based on the claims asserted in its complaint" and denying request for asset freeze where plaintiff failed to show that all funds in defendant's accounts were from the products which infringed plaintiff's trademark); tinyBuild, LLC v. The Partnerships et al., 24-cv-02413 Dkt. 26 (N.D. Ill. May 7, 2024) (finding that Plaintiff had not met its burden of establishing that it was entitled to a prejudgment asset restraint on all funds in defendants accounts where Plaintiff had received expedited discovery from the platforms on defendants' sales and reducing prejudgment asset restraint to a number closer to the revenue amounts provided by the Amazon platform to Plaintiff).

A defendant will necessarily have a burden to establish its costs, in the interest of arriving at a calculation of profits: *i.e.*, the equitable remedy being preserved by the injunction.  See e.g., Monster Energy Co. v. Chen Wensheng et al., 136 F. Supp. 3d 897, 910 (N.D. Ill 2015).  However, the transactions which led to these profits must still be subject to the Plaintiff's claims, and Defendants' burden to offset sales revenue of identified, accused products with cost information has effectively and improperly ballooned into an obligation to offset Plaintiff's scant evidence of the products at issue.  Defendants, like most involved as defendants in Schedule A cases with large defendant groups, sell many different products the vast, vast majority of which are unrelated to Plaintiff's claims as Plaintiff ostensibly understands from the outset of the case, and doubly so once it receives sales data from the platform. Plaintiff has the evidentiary burden to make a clear showing that it is entitled to the relief it is seeking under Rule 65. Winter v. Nat. Res. Def. Council, Inc., 129 S. Ct. 365, 375, (2008); Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd., 2011 WL 710587 at *2 (W.D. Pa. Feb. 22, 2011) ("Prior to issuing a preliminary injunction freezing a defendant's assets, the court must make some attempt to relate the value of the assets encumbered to the likely value of the expected judgment.") (internal citations omitted); Juul Labs, Inc., 439 F.

Supp. 3d at 358-59 (noting that "[Plaintiff] has the burden what profits it seeks to disgorge based on the claims asserted in its complaint" and denying request for asset freeze where plaintiff failed to show that all funds in defendant's accounts were from the products which infringed plaintiff's trademark).  To the extent that relief includes restraining funds from the sales of products *other* than the accused products, Plaintiff hasn't met that burden. *See*, Symphony FS Ltd. v. Thompson, 2018 WL 6715894 at *8 (E.D. Pa. Dec. 20, 2018) ("A plaintiff may obtain a prejudgment freeze on a defendant's assets only if he satisfies three conditions: (1) he asserts a cognizable equitable claim, (2) he demonstrates a **sufficient nexus between that equitable claim and specific assets of the defendant which are the target of the injunctive relief**, and (3) he shows that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed.") (emphasis added).

Defendants nevertheless provide documentary proof, including sales records of the allegedly-infringing products supported by the attached Declaration of Liying Xu.  Defendants have a combined more than $299,087 frozen in their accounts compared to a total revenue and maximum equitable award of $236.49 from sales of the allegedly infringing products. Xu Decl. ¶¶ 6-7, Exhibits D, F. There is no basis for restraining amounts in Defendants' accounts beyond their respective sales amounts of the accused product.  Accordingly, the amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the revenue from the Defendants' respective sales of allegedly-infringing products, $236.49,. *See*, AFG Media Ltd., 2023 WL 9023415 at *8 n. 6 (holding "that all funds allegedly arising from the sale of the allegedly infringing Costumes shall be frozen-but no more."); Shenzhen Dejiayun Network Technology Co., Ltd. v. The Partnerships, 21-cv-06607, [Dkt. 56] (N.D. Ill. Mar. 28, 2022) (granting motion to modify the preliminary injunction in part and reducing asset restraint based on defendants submitting sales records of the accused products supported by declaration); Toho Co. Ltd. v. The Partnerships, 23-cv-00720, [Dkt. 55]

23

(N.D. Ill. Mar. 28, 2022) (issuing show cause order to plaintiff as to why the asset restraint should not be reduced to roughly the revenue of the accused products in response to defendant submitting sales records of the accused products supported by declaration); <u>Awareness Avenue Jewelry LLC, et al v. The Partnerships</u>, 23-cv-00002, [Dkt. 75], (M.D. Fl. May 19, 2023) (modifying preliminary injunction to eliminate the asset restraint as a result of defendant submitting evidence that their profit from the allegedly infringing sales was minimal).

**III.      <u>Conclusion</u>**

      With the benefit of adversary briefing, this Court can now see that the preliminary injunction should be vacated in its entirety because Defendants are not subject to the personal jurisdiction of this court, Plaintiff has no likelihood of success on the merits, and because the preliminary injunction was issued without proper notice to Defendants. Moreover, Plaintiff has failed their burden of demonstrating the proper scope of the asset restraint sought by the preliminary injunction, accordingly, even if the preliminary injunction is left in place, this Court should modify the scope of the preliminary injunction and reduce the asset restraint to accord with the principles of equity underlying Rule 65.

Dated this February 5, 2025

Respectfully Submitted,

<u>/s/Adam E. Urbanczyk</u>
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
adamu@au-llc.com
*Counsel for Defendants*

24

**<u>Certificate of Service</u>**

I certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to all counsel of record.

Dated:         February 5, 2025

/s/Adam E. Urbanczyk
By: Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
adamu@au-llc.com
DC 1005729
*Counsel for Defendants*
*Pro Hac Vice*
